## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 94-CA-00494-SCT

*ALLSTATE INSURANCE COMPANY*

*v.*

*DOROTHY McGORY*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/28/93 |
| TRIAL JUDGE: | HON. FRANK ALLISON RUSSELL |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOSEPH L. MCCOY |
| | GARY SILBERMAN |
| ATTORNEY FOR APPELLEE: | JIM WAIDE |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 7/24/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/14/97 |

**BEFORE PRATHER, P.J., PITTMAN AND SMITH, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

### I. INTRODUCTION

¶1. This key issue in this wilful incendiarism case is whether the insurance company presented clear and convincing evidence of the insured's opportunity to set the fire or to procure its setting. This Court finds that no such evidence was presented. For this reason, the judgment of the trial court directing a verdict for the insured is affirmed. The issues raised by the insured on cross-appeal are without merit.

### II. STATEMENT OF THE CASE

¶2. This case arises from a March 21, 1984, fire which damaged a house owned by Dorothy and Bobby McGory. The house was not the McGorys' home, and the McGorys' rented the house to three separate tenants. The rental house was insured by Allstate Insurance Company (Allstate) for $60,000;

the contents were insured by Allstate for $10,000. Allstate alleged that the McGorys intentionally burned the house, and filed for a declaratory judgment that the fire insurance policy on the home of Bobby and Dorothy McGory was void and that Allstate had no duty to pay the proceeds. The McGorys answered the complaint and filed a cross-complaint alleging that Allstate wilfully or in a grossly negligent manner refused to pay their claim and requested the insurance proceeds as well as punitive damages. Thereafter, Allstate filed a motion for partial summary judgment to dismiss the McGorys' counterclaim for punitive damages. The trial judge granted the motion and found that Allstate had "a legitimate or arguable reason" for denying the McGorys' claim and that Allstate "exhibited good faith in such denial and that there [was] therefore no genuine issue as to [the McGorys'] counterclaim for punitive damages."

¶3. A trial was held November 5-6, 1985, and a jury found for Allstate. The McGorys appealed the denial of their post-trial motions. On appeal, this Court held that Allstate must prove the elements of its case by clear and convincing evidence -- not a preponderance of the evidence. The case was remanded for a new trial. *McGory v. Allstate*, 527 So. 2d 632 (Miss. 1988) (hereinafter *McGory I*).

¶4. A second trial was held August 28, 1989. The second jury also returned a verdict for Allstate. The McGorys moved for judgment notwithstanding the verdict (JNOV), or alternatively a new trial. At the second trial, nine-year-old Charles Carter had testified that he and other children had started the fire by sticking a broom in a gas space heater. In their post-trial motion, the McGorys alleged, among other things, that Allstate in bad faith led Carter to testify that the McGorys' attorney told the child what to say -- when, in fact, the child had given a similar and previously undisclosed statement to an Allstate representative more than a year before the second trial.

¶5. On February 11, 1991, the trial judge denied the McGorys' motion for JNOV, but held that the verdict was against the weight of the evidence and granted the McGorys' motion for a new trial. The trial judge also held that the McGorys were denied a fair trial, based on the questions asked of Carter, the minor witness. Allstate's subsequent motion for reconsideration was denied March 8, 1991.

¶6. Prior to the third trial, the parties stipulated that a judgment on behalf of Allstate against Bobby McGory was to be entered and that all claims Bobby McGory had against Allstate were to be dismissed with prejudice. Bobby McGory assigned all his interests in the case to Dorothy McGory. As a result, Allstate was granted judgment with prejudice against Bobby McGory on Allstate's suit for declaratory judgment.

¶7. A third trial was held November 29-30, 1993. At the conclusion of Allstate's presentation of evidence, the trial judge granted Dorothy McGory's motion for a directed verdict.

¶8. The trial judge issued a final judgment December 21, 1993, in which he held that Allstate "had failed to prove its claim of arson by clear and convincing evidence and that Allstate's proof had not been sufficient to create a jury issue." The parties stipulated that Allstate had paid the Bank of Mississippi the mortgage due on the house ($12, 610.06). On Dorothy McGory's counterclaim, the trial judge ordered Allstate to pay $57,389.94 ($47,389.94 of the remaining coverage for damages to the home and $10,000 for the contents of the house). The trial judge also ordered post-judgment interest in the amount of 8 percent per annum and assessed costs against Allstate. In addition, Dorothy McGory's motion for attorney fees was denied.

¶9. Allstate's subsequent motion for a new trial was denied. From that judgment, Allstate appeals and raises the following issues for consideration by this Court:

**A. Whether the trial court erred in granting the Appellant's Motion for new trial on February 11, 1991, after the jury returned a verdict for the appellee in the second trial of this action?**

**B. Whether the trial court erred in directing a verdict for the defendant after the close of the appellant's case in chief which had withstood motions for directed verdict in the first two trials of this matter?**

**C. Whether the trial court erred in awarding prejudgment interest to the appellee?**

On cross-appeal, Dorothy McGory raises the following issues:

**A. Whether the trial court erred in refusing to reopen the case to consider punitive damages and erred in declining to award the McGorys attorney's fees?**

**B. Whether, on remand to the circuit court for trial on punitive damages, this Court should not permit a nine-man verdict instruction?**

### III. LEGAL ANALYSIS OF DIRECT APPEAL

¶10. "Under Mississippi law, wilful incendiarism by an insured is a defense to the insurer's liability. This is true even if the insurance policy does not expressly exclude coverage for wilful burning. Arson like adultery is seldom seen, and our law allows that it be proved circumstantially." *McGory I*, 527 So. 2d at 634 (citations omitted).

¶11. However, "when an insurer seeks to avoid coverage under a fire insurance policy charging that the insured has been guilty of civil arson, the insurer must prove each element of its claim by clear and convincing evidence." *Id.* at 636. There are three elements of such a claim: 1) incendiary fire, 2) motive on the part of the insured to destroy the property, and 3) opportunity on the part of the insured to set the fire or to procure the setting of the fire by another. *Id.* at 634-35.

**A. Whether the trial court erred in granting the Appellant's Motion for new trial on February 11, 1991, after the jury returned a verdict for the appellee in the second trial of this action?**

¶12. Allstate argues that the trial court erred in granting a new trial when the jury found for Allstate in the second trial of this case. The trial judge found that the evidence was against the overwhelming weight of the evidence.

¶13. "As all know, the grant or denial of a motion for a new trial is a matter committed to the sound discretion of the trial court. We reverse only where there has been an abuse of that discretion." *McGory I*, 527 So. 2d 637; *Ross-King Walker, Inc. v. Henson*, 672 So. 2d 1188, 1192 (Miss. 1996). "In considering a motion for a new trial, the trial judge in exercising his sound discretion may grant the motion thereby overruling the jury's verdict only where such a verdict is against the overwhelming weight of the evidence or is contrary to the law." *Junior Food Stores, Inc. v. Rice*, 671 So. 2d 67, 76 (Miss. 1996).

¶14. The key question here is whether the jury's finding that there was clear and convincing evidence

of the element of opportunity was against the overwhelming weight of the evidence. Allstate argues that it presented evidence of opportunity for the McGorys to set the fire. Specifically, Allstate cites inconsistencies in Bobby McGory's alibi and the fact that Dorothy McGory was nearby in her barbecue restaurant and that she was "in and out" of the rental house the morning of the fire. However, it was undisputed that Dorothy McGory was in the restaurant all afternoon prior to the fire. There were inconsistencies in Bobby McGory's testimony as to where he was prior to the fire. However, it is undisputed that, when the fire started, he was reached at a friend's house several miles away from the rental house. There was no evidence that either Bobby or Dorothy McGory had opportunity to set the fire or procure the setting of the fire by someone else -- much less clear and convincing evidence. Therefore, the verdict in favor of Allstate was against the overwhelming weight of the evidence such that the trial judge did not abuse his discretion in ordering the new trial.

¶15. "Under the authority of a long line of cases, it is a general rule of this Court to respect and follow the holding of the trial judge with reference to his order in granting a new trial since such an order is not a final disposition of the case." *Standard Products, Inc. v. Patterson*, 317 So. 2d 376, 379 (Miss. 1975).

> When, however, all the testimony has been heard and all the arguments delivered and the verdict returned, if, upon a completed view of the entire case, the trial judge is then of the opinion that the verdict is against the overwhelming weight, or clearly against the great preponderance, of the evidence, his duty is, upon a motion for a new trial, to set aside the verdict and grant a new trial. In the latter respect, and to the extent mentioned, the trial judge has a responsible part in the final determination of the issue upon the facts, and his duty of superintendence in that regard is one of his constitutional obligations.

*Spradlin v. Smith*, 494 So. 2d 354, 357 (Miss. 1986).

¶16. The trial judge responsibly executed his constitutional obligations in this regard and did not abuse his discretion in ordering a new trial. Allstate's argument to the contrary is without merit.

**B. Whether the trial court erred in directing a verdict for the defendant after the close of the appellant's case in chief which had withstood motions for directed verdict in the first two trials of this matter?**

¶17. Allstate's next argument is that the trial judge erred by directing a verdict for Dorothy McGory at the conclusion of Allstate's case in the third trial.

> This Court conducts a de novo review of motions for directed verdict . . . . If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted.

*Pace v. Financial Security Life of Mississippi*, 608 So. 2d 1135, 1138 (Miss. 1992). These standards apply to each element of a claim. *McGory I*, 527 So. 2d at 635.

¶18. Thus, the question presented here is, whether the evidence favorable to Allstate and the reasonable inferences drawn therefrom presented a jury question on the elements of 1) incendiarism, 2) motive, and 3) opportunity. This Court has already considered similar evidence on incendiarism

and motive and concluded that the evidence was sufficient to present a jury question. *McGory I*, 527 So. 2d at 636. Indeed, Allstate presented testimony that the fire was intentionally set and that some of the McGorys' debts had been forwarded for collection at the time of the fire.

¶19. However, unlike the first trial, there was no evidence in this case to indicate that Dorothy McGory had an opportunity to set the fire or procure its being set. The only evidence in this regard was the testimony of two volunteer firemen, one of whom testified that Dorothy McGory was at the house when he arrived on the scene to fight the fire, and one of whom testified that he saw Dorothy McGory after the fire was extinguished. Furthermore, Allstate's expert testified that a fire could be set by a timing device. However, there was no evidence that such a device was used to burn the McGorys' rental house. There is absolutely no evidence that Dorothy McGory had the opportunity to set the fire or arrange for its being set. Therefore, the trial judge correctly granted Dorothy McGory's motion for a directed verdict, because Allstate failed to present any evidence for the jury to consider on the element of opportunity.

## C. Whether the trial court erred in awarding prejudgment interest to the appellee?

¶20. Allstate next contends that the trial judge erred in allowing prejudgment interest because the amount of damages had not been liquidated.

> An award of prejudgment interest is normally left in the discretion of the trial judge. *Warwick v. Matheney*, 603 So. 2d 330, 342 (Miss. 1992). "No award of prejudgment interest may rationally be made or computed where the principal amount has not been fixed prior to judgment." *Warwick*, 603 So. 2d at 342; *Stanton & Associates, Inc. v. Bryant Const. Co., Inc.*, 464 So. 2d 499, 504 (Miss. 1985).

*American Fire Protection, Inc. v. Lewis*, 653 So. 2d 1387, 1391 (Miss. 1995).

¶21. Allstate's argument that the amount of damages was in dispute and had not been liquidated is contradicted by the testimony of its own witness. Allstate agent, Bobby Pruitt, testified that the house and its contents were worth the amount for which they were insured. Pruitt also testified that the fire burned the house beyond repair. Thus it is undisputed that the house and its contents were a total loss. For this reason, Allstate's argument on this point is without merit. *See also Simpson v. State Farm and Casualty Company*, 564 So. 2d 1374, 1380-81 (Miss. 1990). The trial judge did not abuse his discretion in awarding prejudgment interest to Dorothy McGory. *See also* Miss. Code Ann. §75-17-7 (allowing prejudgment interest).

## IV. LEGAL ANALYSIS OF CROSS-APPEAL

## A. Whether the trial court erred in refusing to reopen the case to consider punitive damages and erred in declining to award the McGorys attorney's fees?

¶22. On November 2, 1985 (prior to the first trial of this case), the trial judge issued a partial summary judgment dismissing with prejudice the McGorys' counterclaim for punitive damages. Specifically, the trial judge held that Allstate had a legitimate or arguable reason for denying the McGorys' claim and exhibited good faith in such denial. The McGorys did not appeal the ruling on punitive damages when they appealed the initial jury verdict in this case. After the case was remanded

and retried and a third trial was granted, Dorothy McGory moved to reopen the issue of punitive damages. The motion was denied.

¶23. Dorothy McGory now argues that she was entitled to have the issue of punitive damages submitted to the jury. She alleges that Allstate acted in bad faith by hiding evidence that the fire could have been started by children. She also contends that Allstate's attorney lied about the existence of a written report by Allstate's own investigator acknowledging that a child admitted to starting the fire. Dorothy McGory further claims that Allstate's attorney committed fraud at second trial when the attorney questioned the child as to whether Dorothy McGory's attorney told him to say that the children started the fire -- when, in fact, Allstate was aware that the child had spontaneously made the statement to its own investigator several months before the second trial. (R. at 306-307). Based on this alleged bad faith and misconduct, Dorothy McGory argues that the trial judge should have reconsidered the issue of punitive damages.

¶24. The original ruling denying punitive damages was not raised on the first appeal in this case. The trial judge noted that the only thing that had changed since the original ruling on punitive damages was the manner in which Allstate's attorney handled the matter of the child witness. The record reflects that the McGorys were allowed to put the child witness on the stand to tell his version of how the fire started. On cross-examination, Allstate's attorney asked the child many questions, including whether Dorothy McGory's attorney had told the child that version of how the fire started. The McGorys raised no contemporaneous objection. *See Ivy v. General Motors Acceptance Corp.*, 612 So. 2d 1108, 1114 (Miss. 1992). Thus, Dorothy McGory is seeking redress in the form of punitive damages for conduct that she did not object to at the time, thereby allowing the trial judge an opportunity to correct the situation. Moreover, the child was on cross-examination; therefore, Allstate had a right to question his credibility. *Sayles v. State*, 552 So. 2d 1383, 1385 (Miss. 1989); M.R.E. 611(b). Furthermore, the trial judge granted the McGorys a new trial, based, in part, on the Allstate's treatment of the minor witness. Therefore, the original summary judgment (not appealed by the McGorys at that time) should stand.

¶25. Dorothy McGory also asserts that she is entitled to attorney fees under Miss. Code Ann. § 11-55-5 because Allstate's conduct in this case prolonged the proceedings by necessitating the second trial after the remand of this case. Allstate won both times this case was submitted to a jury. There is no evidence that Allstate has prolonged the proceedings in this case. Therefore, Dorothy McGory's assertions to the contrary are without merit.[1]

## B. Whether, on remand to the circuit court for trial on punitive damages, this Court should not permit a nine-man verdict instruction?

¶26. Dorothy McGory argues that the nine-man verdict statute is unconstitutional because it denies minorities an effective voice on the jury. She requests that, on remand, the trial court be instructed to give a unanimous jury instruction. Because this case will not be remanded, Dorothy McGory's argument on this point is moot and will not be addressed.

## V. CONCLUSION

¶27. The issues raised by the appellant, Allstate, are without merit. Furthermore, the issues raised by the cross-appellant, Dorothy McGory, are either moot or without merit. Therefore, the judgment of

the trial court is affirmed.

¶28. **DIRECT APPEAL: JUDGMENT IS AFFIRMED. CROSS-APPEAL: JUDGMENT IS AFFIRMED.**

**PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., AND SULLIVAN, P.J.**

### McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶29. The majority correctly affirmed the circuit court's order denying Allstate's motion for a new trial and awarding prejudgment interest to Dorothy McGory. However, the issues raised in McGory's cross-claim bear closer consideration. Contrary to the majority's conclusion that Allstate did nothing to prolong this litigation, the insurer initiated the original proceedings in this case in 1985 and it appears from the record that the its ongoing actions served to protract this litigation for more than twelve years. Further, the fact that McGory did not appeal the 1985 partial summary judgment on the issue of punitive damages does not preclude her from now seeking compensation for the insurer's actions subsequent to that time. At the very least, therefore, the issue of punitive damages should have been put to the jury and attorney fees awarded to McGory. Accordingly, I dissent from the majority's decision as to McGory's cross-claim.

¶30. I disagree with the majority's conclusion that Allstate did nothing to prolong the litigation in this case. It was, as a matter of fact, Allstate which initiated the litigation, seeking a declaratory judgment on the issues of whether the McGory's policy was void because of alleged misrepresentations made by the insureds and on its contention that the fire was started by the McGorys. Surely, the McGorys did not enter into the insurance contract with the understanding that they would be subject to litigation when they filed an insurance claim. To the contrary, had Allstate merely denied the claim, then the McGorys could have sued Allstate. Further, when looking at whether the issue of punitive damages should be reopened, we must consider the events that have transpired since the case was remanded for a new trial in our decision in *McGory v. Allstate Insurance Co.,* 527 So. 2d 632 (Miss. 1988).

¶31. The majority appears to conclude, for all practical purposes, that McGory's request for consideration of punitive damages is procedurally barred since she did not appeal the circuit court's dismissal of her counterclaim for punitive damages in 1985 -- prior to the first of three trials in this case. It neglects to note that the McGorys filed a motion to reconsider the summary judgment so as to leave open the issue of punitive damages as long ago as 1988. Further, to accept the premise that a summary judgment granted prior to the first of three trials precludes forever the consideration of punitive damages would lead us to think that, for purposes of punitive damages based on an insurer's bad faith refusal to pay or egregious behavior by a party during litigation, the clock stops ticking when the trial's over. However, as in the case *sub judice,* where a decision is appealed, remanded and retried, the mere fact that summary judgment was granted on the issue of punitive damages *before* the first trial does not forever immunize the insurer from liability for punitive damages. The 1985

summary judgment was a finding by the court only that up until that time, McGory was not entitled to punitive damages as a matter of law because Allstate had an arguably legitimate reason for not paying the claim. It had no bearing whatsoever on any subsequent actions by Allstate.

¶32. Although hotly contested by the parties, there was evidence *known to Allstate* that a child had admitted to starting the fire. McGory charged that Allstate's attorney lied about its investigator's report acknowledging the statement, hid the evidence and at the second trial, questioned the child on cross-examination as to whether he'd been coached by McGory's attorney about what to say. Although the child's statement apparently was known to Allstate's investigators since the time of the fire, it does not appear that the McGorys were aware of it until sometime before the second trial. It is clear from the record, however, that even after the McGorys learned of Charles Carter's statements to the investigator, Allstate was less than forthcoming about the report made by its investigator, Leonard Sanders. The insurer alternately thought that the report was lost, or that it could not confirm that a written report had been made since the investigator no longer had his file on the case, and that the report had been made by telephone! Regardless, Allstate was obligated to come forward with the information since both lawyers and laymen in the business of adjusting insurance claims have been bound for nearly fifty years by the same high standards to which attorneys are held under our Rules of Professional Conduct.

¶33. The situation in the case *sub judice* is not unlike the attorney's actions in ***Mississippi Bar v. Land,*** 653 So. 2d 899 (Miss. 1994), where an attorney for State Farm Insurance Company and its insured concealed evidence that a shot had been fired from the insured's child's BB gun at the same time a passerby was injured by what was thought to have been a rock thrown by the insured's lawnmower. There we found that the attorney's actions violated several of the Rules of Professional Conduct including Rule 8.03, amounting to conduct involving "dishonesty, fraud, deceit or misrepresentation" and conduct "prejudicial to the administration of justice." ***Land,*** 653 So. 2d at 909. *See also **Mississippi Bar v. Mathis,*** 620 So. 2d 1213, 1219-1220 (Miss. 1993)(attorney's failure to disclose that autopsy had been performed was "a knowing misrepresentation" involving "fraud, dishonesty and deceit").

¶34. In insurance cases, we long have recognized that punitive damages may be awarded only where the breach of the insurance contract is accompanied by a separate independent tort. ***Aetna Casualty & Surety Co. v. Day,*** 487 So. 2d 830, 832 (Miss. 1986). That is, there must not be just an ordinary tort that could be the product of "forgetfulness, oversight or the like," but a tort of a "heightened" nature, amounting to a reckless disregard of the insured's rights under the contract or evincing "gross, callous, or wanton conduct or. . . accompanied by fraud and deceit." ***Life & Casualty Co. of Tennessee v. Bristow***, 529 So. 2d 620, 622, quoting ***State Farm Fire & Casualty Co. v. Simpson,*** 477 So. 2d 242, 250 (Miss. 1985). We are reminded, as well, that punitive damages are awarded not to compensate the plaintiff for her damages, but to punish the wrongdoer and serve as a deterrent. ***Harvey-Latham Real Estate v. Underwriters at Lloyd's, London,*** 574 So. 2d 13, 17 (Miss. 1990). If an attorney's conduct in withholding evidence evinces fraud, deceit, dishonesty or misrepresentation and is so egregious as to warrant the imposition of serious sanctions under our Rules of Professional Conduct, then surely Allstate's attorney's alleged conduct with regard to the child's statement should, at the very least, raise a jury question as to whether the insurer's ongoing conduct after the first trial warranted an award of punitive damages.

¶35. Regardless of whether punitive damages were awarded or even put before the jury for its consideration, I further would find that the trial court abused its discretion in not awarding attorney fees to McGory. Miss. Code Ann. § 11-55-5, the Litigation Accountability Act under which McGory seeks attorney fees, does not require the imposition of punitive damages, rather it requires only that an attorney or party delayed a proceeding or brought an action without substantial justification or if the court finds that "an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure." Miss. Code Ann. § 11-55-5(1). This is consistent with our findings that punitive damages are not a prerequisite for the award of attorney fees. *Aqua-Culture Technologies, Ltd. v. Holly,* 677 So. 2d 171, 185 (Miss. 1996). As we explained in *Aqua-Culture,* even where punitive damages are not appropriate,

> the trial judge may also validly find that the plaintiff should not have to suffer the expense of litigation forced upon it by the defendant's conduct, and therefore should determine that attorney fees should be awarded. A trial judge should be granted the flexibility to find that, although the actual awarding of punitive damages is inappropriate, the conduct of the defendant is so extreme and outrageous that he rather than the plaintiff, should bear the expense of litigation.

*Aqua-Culture,* 677 So. 2d at 184-185. In the context of insurance cases, we likewise have found that a variety of extra-contractual damages, including attorney fees, may be appropriate even when punitive damages are not awarded. In *Universal Life Insurance Co. v. Veasley,* 610 So. 2d 290, 295 (Miss. 1992), we found that even where a claim was not paid because of simple negligence by an employee of an insurer, the award of reasonably foreseeable extra-contractual damages was appropriate. *See also Pioneer Life Insurance Co. of Illinois v. Moss,* 513 So. 2d 927, 932 (Miss. 1987)(Sullivan, J., concurring, joined by D. Lee, Prather and Robertson, JJ.)(extra-contractual damages may be appropriate even where no punitive damages are awarded). In *Veasley,* we stated that "[a]dditional inconvenience and expense, attorneys fees and the like should be expected in an effort to have the oversight corrected. It is no more than just that the injured party be compensated for these injuries." *Id.* Likewise, in *Andrew Jackson Life Insurance Co. v. Williams,* 566 So. 2d 1172 (Miss. 1990), the Court noted that "[c]onceivably, upon presentation of sufficient proof, consequential or extra-contractual damages (e.g., reasonable attorney fees, court costs, and other economic losses) may be awarded in cases involving a lack of a reasonably arguable basis -- notwithstanding that the insurer is not liable for punitive damages." *Id.* at 1186 n. 13. Given Allstate's ongoing conduct after the first hearing and the actions of its attorney -- all of which served to protract this litigation, the circuit court abused its discretion in not awarding attorney fees to McGory.

¶36. Accordingly, because McGory should have been awarded attorney fees and the issue of punitive damages should have been presented to the jury, I respectfully dissent.

**LEE, C.J., AND SULLIVAN, P.J., JOIN THIS OPINION.**

1. The decision to deny attorney fees to Dorothy McGory is based on Miss. Code Ann. § 11-55-5 and its application to the facts in this case, and is unrelated to the issue of punitive damages. The attempt in the dissenting opinion to link the denial of punitive damages with the denial of attorney fees misconstrues the clear language of this opinion.